# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Wilton Frederick Bland,**
**Petitioner Below, Petitioner**

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0939** (Mineral County 09-C-81 & Grant County 09-C-35)

**Karen Pszczolkowski, Warden,**
**Northern Correctional Facility,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Wilton F. Bland, by counsel Eric S. Black, appeals the Circuit Court of Mineral and Grant Counties' September 1, 2015, order denying his petitions for writ of habeas corpus.[1] Respondent Karen Pszczolkowski, Warden, by counsel David A. Stackpole, filed a response in support of the circuit court order.[2] On appeal, petitioner argues that the circuit court erred in denying habeas relief because his trial counsel was constitutionally ineffective and his plea was involuntary.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2007, the Mineral County grand jury indicted petitioner on seventy-one counts of possession of material depicting minors engaged in sexually explicit conduct, in violation of West Virginia Code § 61-8C-3; four counts of use of obscene matter with intent to seduce a minor, in violation of West Virginia Code § 61-8A-4; two counts of distribution and display to a minor of obscene matter, in violation of West Virginia Code § 61-8A-2; and two counts of employment of a minor to produce obscene matter, in violation of West Virginia Code § 61-8A-

---

[1]It is not readily apparent from the appendix record why the circuit court combined petitioner's petitions for writ of habeas corpus and entered only one order. However, we note that the Twenty-First Judicial Circuit includes both Mineral and Grant Counties.

[2]Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have replaced the original respondent, David Ballard, with Karen Pszczolkowski, Warden of the Northern Correctional Facility, because petitioner is currently incarcerated at the Northern Correctional Facility.

5. Two months later, the Grant County grand jury indicted petitioner on thirty counts each of first-degree sexual assault, in violation of West Virginia Code § 61-8B-3, and sexual abuse by a custodian, in violation of West Virginia Code § 61-8D-5.

In 2008, petitioner entered into *Alford* plea agreements to resolve the pending charges in both Mineral and Grant Counties.[3] In Grant County, petitioner pled guilty to one count of sexual assault in the first degree and ten counts of sexual abuse in the first degree with the sentences to run consecutively. The remaining counts were dismissed. Petitioner was sentenced to not less than fifteen nor more than thirty-five years of incarceration on the sexual assault conviction and one to five years each on the sexual abuse convictions. In Mineral County, petitioner pled guilty to two counts of distribution and display to a minor of obscene matter, two counts of use of obscene matter with intent to seduce a minor, and thirty counts of possession of material depicting minors engaged in sexually explicit conduct with the sentences to run consecutively. Petitioner was sentenced to one to five years of incarceration for each count of distribution, five years for use of obscene matter with intent to seduce a minor, and two years for each count of possession of material depicting minors. The circuit court ordered that petitioner's Mineral County sentences shall run concurrent to his Grant County sentences.

Thereafter, petitioner, pro se filed, petitions for writs of habeas corpus and multiple supplements in Mineral and Grant Counties. Thereafter, the Circuit Court of Mineral County appointed petitioner counsel, who filed two amended petitions for writs of habeas corpus. The circuit court held an omnibus evidentiary hearing on August 4, 2015. At the hearing, the circuit court addressed all the grounds petitioner raised, which included ineffective assistance of counsel and an involuntary guilty plea. After a thorough review of petitioner's claims, the circuit court denied both petitions by order entered on September 1, 2015. This appeal follows.

This Court reviews a circuit court order denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

---

[3]An *Alford* plea, from the decision in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), allows a defendant to enter a guilty plea without admitting guilt. *See* Syl. Pt. 1, *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987) (stating that "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.").

2

On appeal to this Court, petitioner alleges that he was entitled to habeas relief because his trial counsel was ineffective and his plea agreements were not entered into voluntarily. The Court, however, does not agree.

Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on errors alleged in this appeal, which were also argued below. Indeed, the circuit court's fifty-five page order includes well-reasoned findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the circuit court's September 1, 2015, "Order Denying Petitions for Writ of Habeas Corpus" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 14, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

3

IN THE CIRCUIT COURT OF MINERAL & GRANT COUNTIES, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.
WILTON FREDERICK BLAND,
     Petitioner,

vs.

                                       Grant Co. Case No. 09-C-35
                                       Mineral Co. Case No.: 09-C-81

DAVID BALLARD, Warden,
MOUNT OLIVE CORRECTIONAL COMPLEX,
     Respondent.

## ORDER DENYING PETITIONS FOR WRIT OF HABEAS CORPUS

This matter came before the Court on August 4, 2015, for an omnibus evidentiary hearing on the Petitioner Wilton Frederick Bland's habeas petitions. The State appeared by the Mineral County Prosecuting Attorney, James W. Courrier, Jr. and the Grant County Prosecuting Attorney, Jeffrey R. Roth. The Petitioner, commonly referred to as "Mr. Bland," throughout this order, appeared in person in the custody of the West Virginia Division of Corrections and by counsel, Eric Black.

First, the Court asked Petitioner's counsel if the Petitioner had been advised of his duty to raise all habeas claims in one proceeding. Counsel stated that he had so advised the Petitioner.

The Petitioner called John G. Ours, his trial counsel in the underlying criminal cases, to testify under oath. Mr. Ours was then cross-examined by both Prosecuting Attorneys. The Petitioner next took the stand and testified under oath and was cross-examined by both Prosecuting Attorneys. The Petitioner then rested his case. The Grant County Prosecuting Attorney then called Dennis V. DiBenedetto, the former prosecutor of Grant County who prosecuted the underlying Grant County criminal case. Petitioner's counsel then cross-examined Mr. DiBenedetto. The State, through both Prosecuting Attorneys, rested. All counsel then presented argument in

favor of their various positions. Petitioner's counsel then requested time to prepare proposed findings and facts and conclusions of law. Due to the pressed time period in which the Court must decide this matter, the Court granted the Petitioner seven days to prepare the same.[1]

Upon consideration of the record of Mineral County Case No. 07-F-41, Grant County Case No. 07-F-20, Mineral County Case No. 09-C-81, Grant County Case No. 09-C-35; the testimony presented at the omnibus evidentiary hearing; and the arguments of counsel, the Court hereby **DENIES** the Petitioner's petitions for a writ of habeas counsel and **DENIES** his request to withdraw his guilty pleas, vacate the convictions, and grant new trials.

## Factual and Procedural Background

### I. Criminal Cases

Mr. Bland was accused of numerous sexual offenses involving minor children in three counties (Mineral, Grant, and Hardy) and two judicial circuits (21st Judicial Circuit and 22nd Judicial Circuit).[2] Essentially Mr. Bland was accused of targeting male children of whom he could gain custody or with whom he could spend time unsupervised from at least 2003 through 2006, when Mr. Bland was aged approximately 26 to 29. The Mineral County offenses first came to the attention of law enforcement in November 2006 when 14-year old R.G.[3] revealed to his parents that Mr. Bland had asked him to pose nude on the internet to make money. See Mineral County Police Report, Statement of R.G., attached as Exhibit B. During the course of investigating the Mineral County case, the minor victims revealed the name of another juvenile who spent signifi-

---

[1] The West Virginia Supreme Court of Appeals has scheduled oral argument for September 15, 2015.

[2] Grant and Mineral County are both part of the 21st Judicial Circuit. Hardy County is part of the 22nd Judicial Circuit.

[3] The Court is following the custom of referring to juvenile victims by their initials.

cant time with the Petitioner, A.K., who was the victim in the Grant County and Hardy County cases.

Throughout the case, Mr. Bland maintained his innocence. For instance, during the plea-taking and sentencing hearing in Grant County on March 14, 2008, Mr. Bland stated "I have no idea as to why these charges were ever brought against me. I'm not guilty of these charges." However, Mr. Bland continued "I know that there's evidence that is overwhelming that John and I both feel that is incapable of taking on." March 14, 2008, Hearing Transcript, p. 34.

### A. Mineral County Case

The evidence against Mr. Bland in the criminal cases is indeed overwhelming. In Mineral County, Mr. Bland was chiefly accused of showing pornography to three juveniles, trying to convince them to pose nude for a web camera mounted on his computer, and engaging in sexually explicit conduct around the juveniles, including demonstrating to them how to masturbate.

Mr. Bland came to the attention of Mineral County law enforcement in November 2006 after 14-year old R.G. (III) disclosed to his parents that Mr. Bland had asked him to pose nude on the internet for money. Mr. Bland played football with R.G. and other children in the apartment building in which they all resided. He began buying R.G. (and the other juveniles) gifts, allowing R.G. to stay overnight with him and other juveniles, and eventually asked R.G.'s parents for joint custody of R.G., which the parents denied. See Exhibit C, typewritten Statement of R.G., Jr. The victim's statement reveals that Mr. Bland also showed R.G. and R.G.'s brother, J.G., how to masturbate; massaged them; offered to give them "prostate exams;" showed them pornographic matter depicting children, both in book form and on his computer; and tried to stay in a hotel room with R.G. while on a trip to Harrisonburg, Virginia. J.G., then aged 11, corroborated sever-

al of these incidents. See Statement of J.G., attached to the Mineral County Police Report. The third minor victim, W.T., then aged 9, stated that Mr. Bland made him pull down his own underwear and directed W.T. to play with his genitals while he watched. He also described an incident where Mr. Bland showed him a photograph of a naked woman and asked if it made him "horny." See Exhibit D, Statement of W.T. All three boys stated that Mr. Bland bought them gifts and let them play video games at his apartment.

Based on the children's statements, law enforcement obtained a search warrant for Mr. Bland's residence. In the November 18, 2006, search, officers searched Mr. Bland's computer tower, three floppy discs, compact discs, a book, and photographs. One of the floppy discs contained many images of nude children and some images of children engaged in sex acts with adults. Another of the floppy disks contained photographs of Mr. Bland with A.K., the minor victim in the Grant County case. Mineral County Police Report, p. 1.

The investigating officer, State Police Sgt. J.M. Droppelman, interviewed Mr. Bland in a non-custodial interrogation on November 18, 2007, at Mr. Bland's home during the search. Mr. Bland denied all the children's allegations, though admitted to buying R.G. gifts. He also told the officer that "there would be some things on the computer hard drive that he could not explain" but stated he did not know what those things were. Mineral County Police Report, Action Taken section, p. 1.

The primary evidence in the Mineral County case would have been items discovered during the search of Mr. Bland's apartment; a floppy disc with information regarding male children who were available for adoption; a floppy disc that contained seventy-one (71) pornographic photographs of children engaged in sexually explicit conduct with other children and adults; the anticipated testimony of the three minor juveniles; and the testimony of R.G. and J.G.'s parents.

On May 9, 2007, the Mineral County Grand Jury indicted Mr. Bland of seventy-one (71) counts of Possession of Material Depicting Minors Engaged in Sexually Explicit Conduct[4]; four (4) counts of Use of Obscene Matter with Intent to Seduce a Minor; two (2) counts of Distribution and Display to a Minor of Obscene Matter; and two (2) counts of Employment of a Minor to Produce Obscene Matter. For the Mineral County charges, Mr. Bland was arraigned on May 11, 2007. An *in camera* suppression hearing was held on June 28, 2007, where the investigating officer, Sgt. J.M. Droppleman of the Keyser Detachment of the West Virginia State Police testified. Counsel for the Defense motioned to suppress the items from the search of the Defendant's home in Mineral County and the Defendant's statement, both of which were denied. On September 7, 2007, counsel requested that the case be set for trial, which was then scheduled for February 13, 14, and 15, 2008. A Guardian *ad Litem* was appointed for the juvenile victims. In January 2008, the Court and the various counsel began the process to determine whether the juvenile victims would testify via closed-circuit television, as described more fully in West Virginia Code § 62-6B-1, *et seq.* There appeared to be no further proceedings in the matter until Mr. Bland entered his plea on March 17, 2008. In total, the sentence Mr. Bland was facing on the Mineral County Indictment consisted of a period of incarceration of up to 192 years in the penitentiary.

## B.    Grant County Case

In Grant County, Mr. Bland was accused of more serious crimes. These crimes came to light because the juveniles in the Mineral County case advised they knew of another juvenile, A.K., with whom Mr. Bland was affiliated. Mr. Bland dated A.K.'s mother for a time. Eventually

---

[4] In his Second and Third Amended Petitions, the Petitioner wrongly states that he was indicted on forty-one (41) counts of Possession of Material Depicting Minors Engaged in Sexually Explicit Conduct. A review of the Indictment reveals that the Petitioner was indicted on seventy-one (71) counts, Counts I-LXXI.

A.K.'s mother granted Mr. Bland custody of A.K., then aged nine (9) years old, in October of 2003 when she was suffering from a mental illness and Mr. Bland convinced her that his home was more stable than hers.[5] Mr. Bland then proceeded to show A.K. pornography, save pornography he showed A.K. to his computer's hard drive, take showers with A.K., make A.K. sleep in the same bed with him, and ultimately, forcing A.K. to engage in anal and oral sex on numerous occasions. Grant County Police Report, Actions Taken section, p. 6-8. During this period, Mr. Bland lived in Grant County, for a time in a basement apartment at his grandfather's house and for a time at the Thorne Run Inn, also located in Grant County. Some of the alleged sexual acts occurred in Hardy County, where A.K. and his mother resided for a time, and were the source of the Hardy County charges.

A.K.'s mother stated that eventually she became suspicious of Mr. Bland and regained custody of A.K. Grant County Police Report, Actions Taken section, p. 7. During the search of Mr. Bland's residence in Mineral County, one of the floppy discs seized was titled with A.K.'s name and contained two photographs of A.K. Mr. Bland also told law enforcement during his November 18, 2006, interview that someone had complained to Child Protective Services that Mr. Bland was sexually abusing A.K. Id. at p. 5.

Mr. Bland was arrested on March 23, 2007. He asked to speak with Sgt. Droppleman to "get some things off his chest." Sgt. Droppleman Mirandized Mr. Bland and began going through a Miranda Rights form with him, including the portion dealing with a suspect's right to consult with an attorney. Mr. Bland initialed the "Your Rights" section of the form but then de-

---

[5] See Exhibit A, an e-mail dated November 20, 2002. This e-mail read "Elizabeth, I have been thinking today and even before this. I think that you should go ahead and give me Custody of A---. [Name redacted.] Since your and his life has been a lot of moves, here he does not have that worry. It seems like every time he gets settled he has to move again. He sability [sic] level is ok now he seems comfortable in his own room and me not having to stay in it untill [sic] he falls asleep, and as for his accidents, they have stopped. He is doing so much better in school now, and a move up there will shake him back where he was."

cided not to give a statement until he had spoken with his attorney. Mr. Bland did not give a statement that day or subsequently. Grant County Police Report, Actions Taken section, p. 9.

On July 17, 2007, the Grant County Grand Jury indicted Mr. Bland of thirty (30) counts of Sexual Assault in the First Degree and thirty (30) counts of Sexual Abuse by a Custodian. Mr. Bland was arraigned on the Grant County charges on July 13, 2007. An *in camera* suppression hearing was held both on the statements made by Mr. Bland and the search of Mr. Bland's Mineral County residence and, after hearing the evidence and arguments presented, denied Mr. Bland's suppression motions. A Guardian *ad Litem* was appointed for the minor victim, A.K., and the matter was set for trial on January 15, 16, 17, and 18, 2008. The State and the Defense filed their pre-trial memoranda and accompanying proposed documents in late November 2008.

During this interim, the Parties filed various motions regarding the West Virginia Department of Health and Human Resources ("DHHR") Child Protective Service ("CPS") investigation of the minor victim, A.K. The Defense sought to obtain the CPS records pertaining to A.K. because of the possible references to the Petitioner and their potentially exculpatory nature.[6] The Court held a hearing on this issue on August 29, 2007, and, after hearing argument from the State and defense counsel, ordered the DHHR to produce the documents for the Court to review *in camera*. After the DHHR disclosed these records and the Court reviewed them, the Court forwarded a copy of its summary of the relevant portions of the file to all counsel, including Defense counsel.[7] The summary included the opinion of two psychologists who had inter-

---

[6] CPS initially was investigating A.K.'s mother's home and her treatment of him. During this investigation, A.K. was evaluated by psychologists who believed he may have been sexually abused. During the second evaluation, A.K. disclosed that the Petitioner sexually abused him.

[7] The Court stated in its December 6, 2007, Order Regarding Defendant's Motion for Disclosure of Possible Exculpatory Evidence that "The focus of the DHHR file is not on the Defendant; rather, it is on the alleged victim's mother's ability to overcome physical and emotional problems in order to provide a suitable environment for her son. There are references to the Defendant, but the allegations against the Defendant are primarily dealt with only in the two psychological evaluations." These evaluations discussed signs of sexual abuse exhibited by A.K.

viewed A.K. They found that A.K. exhibited signs of sexual abuse, though A.K. did not disclose sexual abuse at the time of the evaluations. Renee Harris, the first evaluator noted that A.K. denied being sexually abused but discussed that A.K. displayed strong signs of sexual abuse, including bowel control problems, and recommended further evaluations or examinations. A.K. again did not disclose sexual abuse by the Petitioner to the second evaluator, Chanin Kennedy either. However, A.K. scored 76 on the Child Sexual Behavior Inventory assessment, where a score of 65 or above is considered clinically significant for child sexual abuse victims. She further noted that he displayed more sexual behavior than typical of a 10-11 year old boy, including simulating sexual intercourse on another child and constantly touching his genitalia in private and in public. Court's Summary of Potentially Relevant Portions of DHHR File, attached as Exhibit E.[8] Mr. Bland reviewed this summary at some point, as he attached it to his *pro se* Third Supplement in Support on Petition for a Writ of Habeas Corpus. When interviewed by the lead investigating officer, A.K. disclosed the sexual abuse in great details. Grant County Police Report, p. 8.

The Grant County trial court also held a 404(b) evidence hearing on August 29, 2007, to determine whether the Mineral County acts and pornography seized could be admitted as evidence in the Grant County case. The trial court found it was admissible in the State's case. September 4, 2007, Order.

At the same time, the process to determine if the victim would testify via closed-circuit television was also initiated. Due to the ongoing motions and processes, the Court continued the trial and re-scheduled it for April 14, 15, 16, and 17, 2008 by its December 17, 2007, Order. On

---

[8] The Court is attaching the version of the summary annotated by the Petitioner. The redactions have been made by the Court to keep A.K.'s identity confidential, as this habeas case is an open proceeding and this order will be available to public view.

January 15, 2008, the Court held a hearing regarding whether to allow the juvenile victim to testify at trial via closed-circuit television.

On February 26, 2008, the State filed statement of one Arthur Allen, who had been a fellow inmate with the Petitioner. Mr. Allen said that the Petitioner confessed the crimes alleged in the Mineral and Grant County cases. The State filed its Amendment to Pre-Trial Memorandum on March 7, 2008, which added Mr. Allen as a witness at trial. Thus, the chief evidence at the Grant County trial was expected to be the testimony of the minor victim and his mother; the testimony of Arthur Allen; e-mails between the Petitioner and A.K.'s mother regarding A.K.; the psychological evaluations of A.K.; and the Rule 404(b) evidence from the Mineral County case, which included the pornographic photographs of children.

There were no further proceedings until the Defendant's March 14, 2008, plea and sentencing hearing. In total, the period of incarceration Mr. Bland faced as a result of the Grant County Indictment was not less than 750 years and not more than 1650 years in the penitentiary.

### C. Plea & Sentencing Hearings

The plea agreement that Mr. Bland entered into was a global plea agreement to resolve the charges pending in three counties and two judicial circuits. On March 17, 2008, at the Mineral County Plea and Sentencing hearing, Mr. Bland's trial counsel stated "Last week in meeting with the prosecutors from all three counties, we came to a deal that would eliminate the necessity of trial in all three counties." Mineral County Plea and Sentencing Hearing Transcript, p. 1.

On March 14, 2008, Mr. Bland entered Alford Pleas as outlined in the Plea Agreement and was sentenced in accordance with the plea agreement. The Grant County Plea Agreement, attached as Exhibit F, states that the Petitioner would entry a plea of guilty to one count of Sexu-

al Assault in the First Degree and would be sentenced to the penitentiary for a term of not less than fifteen (15) nor more than thirty-five (35) years and a plea of guilty to ten (10) counts of Sexual Abuse in the First Degree, resulting in a term of incarceration of not less than one (1) nor more than five (5) years on each count. The sentences were to run consecutive to each other. The agreement further provided that it was "contingent upon the Defendant actually being incarcerated for the sentences imposed and would not apply if the Defendant seeks probation, reconsideration or any other forms of leniency." Plea Agreement, p. 2, paragraph 5.

During the March 14, 2008, plea hearing, the trial court inquired about Mr. Bland's opportunity to consider the State's plea offer:

| | |
|---|---|
| Court:: | [. . .] But as far as understanding what's going on here today, you've had a good deal, a good bit of time to think about this, is this correct? |
| Mr. Bland: | Everyday. |
| Court: | Okay. And I understand that some version of this Plea Agreement was presented to you, I think, several weeks ago." |
| Mr. Bland: | Yes, sir. |
| Court: | Is that correct? |
| Mr. Bland: | Yes, sir. |
| Court: | And you've had, have you had a lot of time to think about it? You said you've thought about it everyday, and you've had a lot of time, have you, to talk with Mr. Ours about it? |
| Mr. Bland: | We spoke it about Sunday, yesterday, and again today. |
| Court: | Okay. |
| Mr. Bland: | And prior to that, I'm sure. |
| Court: | And prior to that? Okay. And you've got five family members with you here today and they've been here, I think, every single hearing that we've had. Have you had an opportunity to discuss this with any members of your family that you chose to? |
| Mr. Bland: | I haven't had a chance to really discuss this with my mother yet. I don't know what you can do on that but I've only spoke with my grandparents about it, and I spoke with them about it, I think, the possibility on Wednesday, and I spoke with them on the phone. I spoke with Mother on the phone, but not face-to-face. |
| Court: | And I've think, I've gotten the impression that Mr. Ours has been in contact with your family fairly often I would believe? |
| Mr. Ours: | The grandparents have been kind of intermediaries. They seem him more often than I do and deliver messages and take messages. |

Grant County Plea and Sentencing Hearing Transcript, pp. 20-21.

This line of questioning regarding his opportunity to consider the plea agreement and his satisfaction with counsel continued later on during the hearing.

| | |
|---|---|
| Court: | [. . .] So you've been able to understand all of this and think about it? You seem very relaxed even though this is, I'm sure, not a pleasant situation. You seem to be fairly well controlled, your faculties and calm and have given this a lot of thought. Would that be a fair, a fair statement? |
| Mr. Bland: | That would be fair, Your Honor. I'd like to add this has been, like you said, very trying for me. And a lot of it I don't understand. I guess I'll never understand. Like I stay, like my counsel just said, I've maintained my innocence. I will maintain my innocence until the day I'm in the ground. |
| Court: | Are you satisfied that Mr. Ours has looked into any defenses that you might have? |
| Mr. Bland: | I'm satisfied I think that a lot of the proceedings had a lot of affect [sic] on Mr. Ours as well, because of Mr. Ours knowing me, my family, being my attorney for a number of years, going to school with his daughter. [Mr. Bland continued to describe his community and family connections to Mr. Ours.] |
| Court: | And I, so I, because of that connection, I would assume you would expect he would not make his recommendation that you take this plea lightly. He would not recommend that if he did not think that was in your best interest Are you. . . |
| Mr. Bland: | I believe so. I believe so. |
| Mr. Ours: | For clarification. I advised him to do it, Your Honor, but at all times told him that it was his decision and not mine. |
| Court: | Is that, Mr. Bland, is that correct? |
| Mr. Bland: | Yes, yes. I was about to say that. Thank you, John. |
| Court: | You're the one that has to do the time and you're the only one that can re ally make this decision? |
| Mr. Bland: | Yes, sir. And, I would like you to, I ask you to go within the contents of the law. |

Grant County Plea and Sentencing Hearing Transcript, pp. 25-26.

The Grant County trial count also engaged in a colloquy with Mr. Bland about the plea he was undertaking and the sentencing consequences.[9] Shortly thereafter, Mr. Bland entered Alford pleas to one count of First Degree Sexual Assault and ten counts of Sexual Abuse in the First Degree. The Court inquired of Mr. Bland whether he wished to say anything prior to sentencing. Mr. Bland responded:

| | |
|---|---|
| Mr. Bland: | Your Honor, I, like I said, I would ask you to go into the contents, of the law, of course. You've been very fair in this case. Again, I would like to say I maintain my innocence. Once this twenty-five year thing is up, I want to do my best at what I can do to convince society that I'm back in the fold. |
| Mr. Ours: | Fred, I want to interrupt you. You just said, "once this twenty-five year thing is up." You have no misunderstanding. You're not automatically out after twenty-five years. You've got to go before the Parole Board and be released. You understand that? |
| Mr. Bland: | Yes, I do. |
| Mr. Ours: | Okay. |
| Mr. Bland: | Yes, sir. But they still kick me out at forty-two. |
| Mr. Ours: | Okay. I didn't want you to, nevermind. |
| Mr. Bland: | They still kick me out at forty-two, whichever comes first. The only thing I can say is that none of this has made any sense to me. I have no idea as to why these charges were ever brought against me. I'm not guilty of these charges. I know that there's evidence that is overwhelming that John and I both feel that is incapable of taking on. So, in light of my past history, Your Honor, I ask that you weight that. That there has been no past felonies. Take that into consideration. And I agree that you have been fair. Denny's been substantially fair and Mr. Ours. |
| The Court: | I appreciate that. Okay. This is, these things are never easy. It's really, a, not only, first of all, a tragedy for the victim in this matter and any victims in Mineral County as well, but it's also, I admit, a tragedy for the Bland family because they're not going to be seeing their son out in the sunshine for a very long time. |

Id, pp. 33-35.

The Court then sentenced Mr. Bland to a term of not less than fifteen (15) years nor more than thirty-five (35) years in the penitentiary on the count of First Degree Sexual Assault and a

---

[9] Mr. Bland should have been aware of the sentencing consequences, as the written plea agreement he signed stated specified that the plea agreement was contingent on him serving the actual sentence.

term of not less than (1) nor more than five (5) years for each of the ten counts of Sexual Abuse in the First Degree, all of which were run consecutively to each other. Thus, Mr. Bland was sentenced to an aggregate term of not less than thirty-five (35) nor more than eighty-five (85) years on the Grant County case.

On March 17, 2008, Mr. Bland entered Alford pleas in Mineral County. Although it does not appear a written plea agreement was filed with the case, the Alford Plea of Guilty, attached as Exhibit G, states that Mr. Bland understands "that any plea bargaining which appears in the record of this case is not binding up the Court with respect to punishment, or probation and understand that in the event I should enter an Alford Plea of Guilty to the offenses, I will be sentenced, for 2 counts of displaying obscene matter to a minor, 5 years each; for 2 counts of use of obscene matter with intent to seduce a minor, 5 years each; and for 30 Counts of possession of material depicting a minor engaged in sexually explicit conduct, 2 years each, but it is still my intention and desire to enter an Alford Plea of Guilty." The Mineral County Prosecutor stated that this agreement was "within the parameters of the Plea Agreement in Grant County and it would run concurrent with that time." Mineral County Plea & Sentencing Hearing Transcript, p. 1.

There was some discussion between counsel and the trial court whether the plea would be binding on the Court, especially when it came to making the Mineral County sentence run concurrent with the Grant County sentence. The Court maintained that it would not accept a binding plea and would reserve a decision regarding running the sentences consecutive or concurrent to itself.[10] Based on this, the Court granted a recess to allow Mr. Ours to speak with Mr. Bland and

---

[10] Historically judges in the 21st Judicial Circuit, including this judge, refuse to accept binding plea agreements.

the Bland family. The plea-taking resumed after the recess and the Court accepted the Petitioner's guilty pleas. <u>Mineral County Plea & Sentencing Hearing Transcript</u>, pp. 2-5.

The Mineral County Court also inquired of Mr. Bland's time to consider the plea and his satisfaction with counsel.

| | |
|---|---|
| The Court: | Mr. Bland, you have read the agreement and you understand it? |
| Mr. Bland: | Yes, sir. |
| The Court: | And are you satisfied with Mr. Ours' representation? |
| Mr. Bland: | Yes, sir. |
| The Court: | Mr. Ours, you have explained to Mr. Bland all of his constitutional rights and all of the essential allegations in each count in the indictment the State is required to prove? |
| Mr. Ours: | Yes, sir. |
| The Court: | And you are satisfied you have received from the State the discovery information to which you are entitled? |
| Mr. Ours: | It is continuous but so far, yes. |
| [The State]: | I have given him everything I have, Judge. |
| The Court: | And are you satisfied that Mr. Bland is entering his plea freely, voluntarily and with knowledge of the consequences? |
| Mr. Ours: | Yes, sir, Your Honor. I spoke with him, for the court's benefit, Sunday about nine days ago a lot in the afternoon. I spoke with him Wednesday of last week a lot of the afternoon. I spoke with him more than an hour—almost two hours—Friday before he entered his plea about the plea itself. We have been reviewing the evidence in this case for almost thirteen months. |
| The Court: | Alright. Mr. Bland, do you make this plea voluntarily and of your own knowledge and consequences? |
| Mr. Bland: | Yes, sir. |

Mr. Bland pled as specified in the Alford Plea of Guilty and was sentenced to a term of five years on each Displaying Obscene Matter to a Minor count (for a total of 10 years); to five years on each count of Use of Obscene Matter with Intent to Seduce a Minor (for a total of 10 years); and to two years on each count of Possession of Material Depicting Minors in Sexually Explicit Conduct (for a total of 60 years).[11] Mr. Bland's aggregate sentence in Mineral County

---

[11] At the time of the offenses and Petitioner's sentencing, the penalty for each count of Possession of Material Depicting Minors in Sexually Explicit Conduct was two years' incarceration. The Legislature has since modified the

was a term of incarceration of up to 80 years in the penitentiary, which was to be run concurrently with the Grant County sentence.

On or about April 14, 2008, Mr. Bland wrote a letter to the Mineral County trial court, Judge Andrew Frye presiding, requesting that he be allowed to withdraw his plea. The Court denied this request in its April 18, 2008, Order Summarily Dismissing Motion to Withdraw Plea because Rule 32(e) of the Rules of Criminal Procedure provides two mechanisms through which a plea may be set aside after sentencing, through a direct appeal or through a habeas petition, neither of which had yet occurred at that time.

### D. Petitioner's Background

Mr. Bland was aged approximately 26 years old to 29 years old at the time of the offenses alleged in the Indictments. At the time Mr. Bland entered his Alford pleas, he was aged 30 years old. He had graduated high school and was two years into a four-year college degree at Potomac State College at the time he was charged in the Mineral and Grant County cases.[12] When asked at his Grant County Plea and Sentencing Hearing what type of college courses he had taken, Mr. Bland responded "Psychology, Sociology, Physiology, Science, Embalmer's Science, Human Anatomy and Physiology, standard college courses, English 101, English 102, Music 30, Music Appreciation is what it's called, Art 30. My major in college was Mortuary Science and my minor was Music." Grant County Plea and Sentencing Transcript, pp. 22-23. He described his various employments at call centers, funeral homes, and part-time work at groceries stores and the United States Census Bureau. Id at pp. 23-24. He also described that he ran for the office of

---

penalty to a term of incarceration of not less than two not more than ten years when a defendant possesses 50-600 images. W.Va. Code §61-8C-3(c).

[12] See March 17, 2008, Mineral County Plea and Sentencing Transcript, p. 15.

County Commissioner in Mineral County. Mineral County Plea & Sentencing Hearing Transcript, pp. 16. Mr. Bland's testimony regarding his education and work history was substantially the same in both the Mineral and Grant County plea and sentencing hearings.

At the time of the sentencing hearing, the Petitioner was taking the medication Lexapro, for, as he described it, mood swings. Grant County Plea and Sentencing Transcript, pp. 24. When the Mineral County Court asked Mr. Bland during his Mineral County plea and sentencing hearing whether he had been treated for any mental or emotional disability, he replied "Not precisely. I have seen a psychologist over a nervous breakdown that I had retained about a couple years ago." Mineral County Plea and Sentencing Transcript, p. 16.[13] When asked if he had consumed any substances within the last twenty-four hours that would have affected his ability to understand the plea and sentencing proceeding, Mr. Bland replied "No, sir." Id.

## II.    Procedural Background

Mr. Bland has had two ongoing habeas corpus cases: Mineral County Case No. 09-C-81 and Grant County Case No. 09-C-35. Throughout the Defendant and his counsel have filed identical motions in both cases.

Mr. Bland filed his first *pro se* Petition for a Writ of Habeas Corpus Ad-Subjiciendum on July 2009 in both the Mineral and Grant County. By the end of July 2009, the Court appointed counsel for the habeas cases. Counsel filed the Supplement to *Pro Se* Petition for Writ of Habeas Corpus and Brief in Support Thereof on February 2, 2010.Mr. Bland then filed his *pro se* Second Supplement in Support on Petition for a Writ of Habeas Corpus on July 12, 2010. The matter was scheduled for hearing on July 20, 2010.

[13] Mr. Bland did not mention a nervous breakdown during the Grant County Plea and Sentencing hearing.

Before the hearing, Mr. Bland sent a letter to the Court stating that he wished to terminate his habeas counsel's representation and that he had filed a complaint with the disciplinary counsel against him. Thus, in its Order Continuing Hearing and Regarding Counsel, the Court relieved habeas counsel of further representation in the matter and continued the hearing. The Court denied Mr. Bland's request for the appointment of court-appointed counsel because it was apparent from Mr. Bland's letter and filings that he was paying an inmate paralegal to represent him instead of an attorney.[14] Mr. Bland filed his *pro se* Third Supplement in Support on Petition for a Writ of Habeas Corpus on August 6, 2010.

On June 1, 2011, Petitioner's current counsel, Eric Black, filed a Notice of Appearance in both the Mineral and Grant County cases. Mr. Black filed the Second Amended Petition for Writ of Habeas Corpus and a Losh List on August 10, 2011. The Petitioner did not waive the following Losh List grounds: (1) Trial court lacked jurisdiction; (2) Statute under which conviction was obtained was unconstitutional; (3) Involuntary guilty plea; (4) Mental competency at time of trial; (5) Denial of counsel; (6) Failure of counsel to take appeal; (7) Consecutive sentences for same transaction; (8) Coerced confessions; (9) Suppression of helpful evidence by Prosecution; (10) Ineffective assistance of counsel; (11) Irregularities in arrest; (12) Excessiveness or denial of bail; (13) Challenge to the composition of grand jury or its procedures; (14) Failure to provide a copy of the indictment to the Defendant; (15) Improper venue; (16) Nondisclosure of Grand Jury minutes; (17) Claim of incompetence at time of offense, rather than at time of trial; (18) Claims concerning use of informers to convict; (19) Constitutional errors in evidentiary rulings; (20) Sufficiency of evidence; (21) Question of actual guilt upon acceptable guilty plea; (22) Severer sentence than expected; (23) Excessive sentence; (24) Mistaken advice of counsel as to

---

[14] Kenny Sayre, then a fellow inmate with Mr. Bland, wrote a letter to the Court which stated that he was serving as Mr. Bland's legal representative.

parole or probation eligibility; and (25) Amount of time served on sentence, credit for time served.

The Petitioner filed a Petition for Writ of Mandamus to the West Virginia Supreme Court of Appeals on January 27, 2015. The Supreme Court granted the appeal and ultimately made the case returnable by September 15, 2015.

The Court held a status hearing on April 14, 2015, in Mineral County. The Defendant appeared by counsel, the Mineral County Prosecutor appeared in person, and the Grant County Prosecutor appeared by telephone. Former Grant County Prosecutor Dennis V. DiBenedetto and Mr. Bland's trial counsel, John G. Ours, also appeared for scheduling purposes. After discarding numerous possible hearing dates due to scheduling conflicts between the Court and all counsel, the Court scheduled the omnibus evidentiary hearing for August 4, 2015, in the Grant County Courthouse. On July 30, 2015, Petitioner filed the Third Amended Petition.[15]

In his Third Amended Petition, Mr. Bland asserts two grounds in support of his petition: (1) that he received ineffective assistance of counsel; and (2) that his plea was not voluntarily and intelligently made. In both his Second and Third Amended Petitions, the Petitioner incorporated by reference all prior filings, including the *pro se* filings for a total of three *pro se* filings and three petitions by counsel for the Court to consider.

---

[15] The Third Amended Petition was filed to correct certain inaccuracies regarding the underlying criminal cases. Although most of the inaccuracies were corrected, the Petition still states that Mr. Bland was indicted on 41 counts of Possession of Material Depicting Children in Sexually Explicit Manner. As discussed above, Mr. Bland was indicted on 71 counts of this crime. The Petition also implies that Mr. Bland only entered one plea in both cases on March 14, 2008, hearing in Grant County. Mr. Bland actually entered pleas on two separate occasions in the two separate cases. Specifically, Mr. Bland entered the pleas in Grant County on March 14, 2008, and in Mineral County on March 17, 2008.

### III.  Omnibus Evidentiary Hearing

The Petitioner's first witness was his trial counsel in both the Mineral and Grant County cases, John G. Ours. Mr. Ours described his nearly 40 years of practice in Grant County as being that of a typical small-town practitioner handling many sorts of civil and criminal cases, including serious criminal cases such as sexual offenses and murder. He testified that between July 1, 2009, and July 31, 2015, he handled 215 criminal cases from start to finish. Mr. Ours stated that of the approximately 30 sexual offenses cases he has handled, thirteen proceeded to trial, with nine of those resulting in acquittals.

Prior to being appointed to the criminal cases, Mr. Ours testified that he had known Mr. Bland since Mr. Bland was a small child. Mr. Bland attended school during the same time as Mr. Our's eldest daughter and Mr. Ours was on a first-name basis with Mr. Bland for years before the 2007 criminal cases. Mr. Bland's testimony corroborated this information and Mr. Bland testified at the omnibus evidentiary hearing that he requested Mr. Ours to represent him.

Mr. Ours testified that his memory on the matter was not precise due to the length of time between the underlying cases, which ended in guilty pleas and convictions in March 2008, and the fact that he turned over his files to the Petitioner's first habeas counsel. Logically this would likely have occurred in or around the Summer of 2009, when the original habeas counsel was appointed.[16] Mr. Ours testified that he did review his voucher, which is attached as Exhibit H. Mr. Ours testified that he visited Mr. Bland in Potomac Highlands Regional Jail eight (8) times and spent approximately two (2) hours with Mr. Bland per visit. He also exchanged correspond-

---

[16] The Court further notes that it brought all the case files to its main office in Keyser, Mineral County, prior to the omnibus hearing and that Mr. Ours, whose office is located in Petersburg, Grant County, was not able to view the files prior the omnibus hearing.

ence with Mr. Bland approximately thirty-five (35) times and had significant contact with Mr. Bland's family regarding the charges.

Although Mr. Ours testified that he did not have a specific recollection of giving Mr. Bland a copy of the indictments in the criminal cases, his custom was to make a copy of the indictments and mail it to his client. He also did not have a specific memory of reviewing the discovery with Mr. Bland but it was his custom to do so and he met with Mr. Bland at the Potomac Highlands Regional Jail for enough time on several occasions to adequately review the discovery. Mr. Ours stated that he did not give Mr. Bland the portions of the discovery containing pornographic pictures of children because of his concern that giving him copies would cause Mr. Bland to be in further legal difficulties for additional possession of material depicting minors in a sexually explicit manner.

Mr. Ours described his view of the case as hopeless, due to the extent of the evidence and dealing with criminal charges in three counties with three prosecutors and two judicial circuits. As Mr. Ours remarked colloquially that once in a while you can pull a rabbit out of a hat but you can't pull a rabbit out of a hat that many times. He stated that if Mr. Bland had been sentenced to all the charges consecutively, Mr. Bland would be sentenced to hundreds of years in jail.[17] Further, Mr. Bland's only real defense was that the minor victims were lying and that he did not commit the crimes. Mr. Ours testified that his client's hypothesis was that the victims were angry at him for failing to continue giving them gifts.

Petitioner's counsel then asked Mr. Ours whether he had interviewed potential witnesses identified by Mr. Bland. Although Mr. Ours could not specify which individuals with whom he spoke, he stated that he did speak to individuals about the case that Mr. Bland had identified and

---

[17] Mr. Bland was facing up to 192 years in Mineral County and 750-1650 years in Grant County.

that these persons would have been character witnesses and not alibi or other fact witnesses. Mr. Ours did not remember Mr. Bland requesting that any expert witnesses be hired for a possible defense.

Petitioner's counsel inquired whether Mr. Ours had considered any competency defenses. Mr. Ours stated that Mr. Bland had stated that a year or two before the criminal charges, Mr. Bland had suffered from an episode of some sort and was treated for depression and prescribed anti-depressant medication. Mr. Ours spoke with Mr. Bland's treating psychiatrist, Dr. Eagle.[18] Mr. Ours recollected that he inquired of Dr. Eagle whether an insanity or diminished capacity defense would be possible and that Dr. Eagle informed him that Mr. Bland's illness was not of that nature. Mr. Ours stated that from his dealings with Mr. Bland, both throughout Mr. Bland's life and in representing him, he personally did not think Mr. Bland was incompetent. He did not specifically recall speaking with Mr. Bland about a competency defense but believes he did so based on Mr. Bland's disclosure of a treatment for mental illness and the conversation with Dr. Eagle. He also did not recall that Mr. Bland or any other individuals specifically requested that Mr. Bland undergo a competency evaluation.

Petitioner's counsel next inquired whether Mr. Ours had considered requesting the Court for a psychological evaluation on any of the minor victims or a taint hearing to determine whether the children's interviews were unnecessarily suggestive. Mr. Ours stated that he did not consider the possibility of a taint hearing or a psychological evaluation of the children and that he considered the evidence in the cases, as a whole, to have been overwhelming. Upon cross-examination by the Grant County Prosecuting Attorney, Mr. Ours stated that he was able to question some of the victims, though not all due to the Guardian *ad Litem*'s opposition to inter-

---

[18] Despite not having his file or the Court files to review, Mr. Ours independently recollected the name of Mr. Bland's psychiatrist.

views of all the victims. Based upon his review of the victim's statements and his interviews with some of the victims, Mr. Ours found them to be credible and did not notice any signs of coaching or suggestion. When Mr. Ours asked his client why the victims would make false allegations, Mr. Bland stated it was because he had stopped giving money and gifts to the victims. Mr. Ours considered the possibility of a jury accepting Mr. Bland's explanation to be remote.

Petitioner's counsel then proceeded to question Mr. Ours about plea discussions. Mr. Ours stated that he would have asked Mr. Bland's permission to engage in plea negotiations, as he testified he does in every criminal case. In this case, Mr. Ours was negotiating with three prosecutors at the same time and that the prosecutors excluded any possibility of Mr. Bland receiving probation or another alternative sentence. Mr. Ours stated that he considered a plea the best course of action available to Mr. Bland, due to the overwhelming evidence and likelihood of Mr. Bland being convicted and sentenced to hundreds of years of incarceration should he proceed to trial.

The most damning evidence is of course the testimony of R.G., a 14-year old boy, J.G., a 11-year old boy, W.T., a 9-year old boy, and A.K., a 14-year old boy. The 71 explicit pornographic photographs of children contained on the floppy disks found in the Petitioner's room could only have damaged the Petitioner's case at trial.[19] Any argument that those floppy disks were not his or were planted by the juvenile would not likely have been accepted by the jury, especially given that they were labeled, presumably in the Petitioner's handwriting, and one was labeled with A.K.'s name. Furthermore, the Petitioner's actions and comments to the juveniles' parents were concerning, such as his successful gain of A.K.'s custody and attempt to obtain informal part-custody of R.G., which is unusual for a single 29-year old man. Lastly, the Grant

---

[19] Mr. Ours testified that his secretary physically recoiled upon filing the discovery and viewing at least some of the photographs.

County Prosecutor was planning on introducing at trial the testimony of Arthur Allen, a fellow inmate to whom Mr. Bland confessed the crimes.

Mr. Ours stated that he discussed the possibility of a plea with Mr. Bland on multiple occasions and that he always made clear to Mr. Bland that he could enter an Alford plea, which would allow Mr. Bland to maintain his innocence but concede that the evidence against him was sufficient for convictions should the matter proceed to trial.[20] Mr. Ours also testified that he discussed the plea negotiations with Mr. Bland's grandparents. Mr. Ours stated that he did his best by Mr. Bland and that his chief consideration was to obtain a plea agreement that would allow Mr. Bland to be discharged and be able to live part of his life outside of a penitentiary.

The Petitioner then took the stand and testified under oath. Mr. Bland testified that he had known Mr. Ours nearly all his life, due to attending school with Mr. Ours's daughter, attending the same church, and occasionally golfing with Mr. Ours's father. Because of these connections, Mr. Bland requested that Mr. Ours be appointed to defend him. Mr. Bland discussed in detail his dissatisfaction with Mr. Ours. His allegations were as follows: that Mr. Ours refused to interview Kevin Crites, Jesse Crites, and Joseph Crites, individuals he described as both fact and character witnesses; Mr. Ours told him on one occasion that if Mr. Bland was a wealthy man that he could write a check and make the charges go away and on another occasion Mr. Ours said that "Jesus Christ couldn't win this case;" Mr. Ours did not visit him eight times at the Potomac Highlands Regional Jail; Mr. Ours did not review the discovery with him at all, though he did see some of the statements made by the victims; that while Mr. Ours showed him the Mineral County Indictment, he did not show him the Grant County Indictment; Mr. Ours refused to hire a private investigator despite Mr. Bland informing his counsel that one of the victims was a pathological li-

---

[20] Mr. Bland did ultimately enter Alford pleas in Mineral and Grant Counties.

ar; Mr. Ours refused to request a psychological evaluation of any of the juvenile witnesses; Mr. Ours refused to conduct a taint interview; Mr. Ours forced him to enter a plea; Mr. Ours did not properly prepare him to enter a plea; Mr. Ours promised Mr. Bland that he would receive probation; and Mr. Ours refused to consider a competency defense.

Mr. Bland also discussed his mental status around the time of the offenses. He testified that he began to see Dr. Eagle, his treating psychiatrist for a time, in 2005 when he woke up one morning not knowing who he was. Mr. Bland testified that he was diagnosed with dissociative amnesia and depression and was prescribed anti-depressant medication, specifically Paxil, Klonopin, and Lexapro. Mr. Bland testified that to this day, his long-term memory is spotty though his short-term memory is excellent. Mr. Bland stated that though he did not discuss a diminished capacity defense with his attorney he begged his attorney to speak to Dr Eagle. Mr. Bland also stated that when the criminal cases were ongoing, he was not aware of the possibility of a competency evaluation. During this portion of the Petitioner's testimony, the Petitioner did not introduce any medical or psychological records in support of his testimony or argument.

Mr. Bland testified that he told Mr. Ours that he would absolutely not plea. Mr. Bland did believe that two or three different pleas were proposed and throughout Mr. Ours told him over and over to enter a plea. When it came to the plea and sentencing hearings, Mr. Bland stated that Mr. Ours did not properly prepare him for the plea hearing and advised him that he would likely receive probation or an alternative sentence. Then Mr. Bland stated he did not remember the plea and sentencing hearings and opined that this was because of the medication he was taking. When the Mineral County Prosecuting cross-examined him and read from a transcript at one of the plea hearings, Mr. Bland maintained that he did not remember the hearing.

Mr. Bland then opined that had his cases gone to trial, there would have been a "slightly different" result. Mr. Bland further opined that Mr. Ours rushed him into taking a plea because Mr. Ours was running for Family Court Judge and that the Mineral and Grant County Prosecutors were also running for election and would have been motivated to obtain a conviction. During his testimony, former Grant County Prosecutor Dennis V. DiBenedetto stated that he had no political motivation to obtain a conviction and ran unopposed in every election after he was first elected prosecutor in 1984. On cross-examination by the Mineral County Prosecutor, Mr. Bland was unable to establish why the then-Grant County Prosecutor and the then-Mineral County Prosecutor would have a political motivation to convict him when they were running unopposed in the 2008 elections.[21] Nor was Mr. Bland able to establish why his attorney, who was running for Family Court Judge, would have a political motivation to get a criminal defendant to plea when the office for which he was running was not related to criminal cases.

After his testimony, the Petitioner rested. The Grant County Prosecutor, Jeffrey R. Roth, then called his predecessor, Dennis V. DiBenedetto to the stand. Mr. DiBenedetto testified that prior to his retirement he had been the Grant County Prosecutor for 28 years, from 1984 to 2012. During many of those years, he testified that he had prosecuted cases in which Mr. Ours represented the defendants. Mr. DiBenedetto stated that he always considered Mr. Ours a worthy opponent and that he represented his clients well, including on sexual offense cases. In this particular Grant County case, Mr. DiBenedetto testified that he had no independent recollection whether Mr. Bland received his own copy of the Indictment but it was the usual practice in the county for counsel to receive a copy at the arraignment. Mr. DiBenedetto testified that, like Mr. Ours, he had known Mr. Bland for years before the institution of the criminal case. The DiBenedetto chil-

---

[21] The then-Mineral County Prosecutor, Lynn A. Nelson, ran unopposed for an open circuit judge position.

dren also attended school with Mr. Bland and Mr. DiBenedetto knew him personally due to this connection. Mr DiBenedetto testified that he had spoken to Mr. Bland on many occasions prior to the criminal case and that he noticed no change in behavior or demeanor from those times through the underlying Grant County criminal case. Mr. DiBenedetto stated that during the plea hearing, Mr. Bland appeared to understand the plea and sentencing process and understood the plea agreement he had entered into. From this, Mr. DiBenedetto expressed the opinion that there was no reason to request a competency evaluation of the Petitioner. Mr. DiBenedetto stated that, to the best of his knowledge, the Court always granted a competency evaluation any time there was any indication one might be needed.

Mr. DiBenedetto's testimony then pivoted to the underlying Grant County criminal case. He testified that the State's evidence included Rule 404(b) evidence regarding the acts involved in the Mineral County case and a confession that a then-fellow inmate of the Petitioner's stated that the Petitioner made to him while in custody. He testified that he never considered the possibility of probation for Mr. Bland and that the intent of the plea agreement was for Mr. Bland to serve his sentence in prison. Although he couldn't recall on cross-examination how many plea offers were made to the Petitioner, both he and the Mineral County Prosecutor had a timeframe in mind for the term of incarceration for Mr. Bland to serve, which was to allow the minor victims to grow to adulthood and to allow the minor victims to process the impact of the sexual abuse and inappropriate behavior of the Petitioner.

The State, both the Grant County Prosecuting Attorney and the Mineral County Prosecuting Attorney, then rested their case.

The Petitioner's counsel next presented his argument to the Court. Counsel argued that because trial counsel found this case to be overwhelming, he failed to take steps that a reasona-

bly prudent attorney would have taken, namely to hire a private investigator, interview witnesses, request a competency evaluation, request evaluations of the minors, and request a taint hearing to determine if the children's testimony was unnecessarily suggestive. Petitioner's counsel requested that the Court allow Mr. Bland to withdrawn his Alford pleas, vacate the sentences, and order new trials.

Both the Grant County and Mineral County Prosecuting Attorneys opposed the Petitioner's request and presented argument. They both argued that trial counsel argued reasonably in this matter, that he had taken some of the steps alleged by the Petitioner that he did not take, and that there was no reasonable cause to doubt the Petitioner's competency and request an evaluation. The Mineral County Prosecuting Attorney argued that trial counsel would have a better understanding of the Petitioner's mental state than most due to his prior acquaintance of many years with the Petitioner and that Mr. Ours did speak with the Petitioner's treating psychiatrist, who advised that there was not a good argument regarding any type of incompetency.

### Legal Background

In habeas cases, the Petitioner must prove his claims by a preponderance of the evidence. State ex rel. Richey v. Hill, 216 W.Va. 155, 163, 603 S.E.2d 177, 185 (2004). The Petitioner asserts two arguments: (1) that his pleas were not voluntarily and intelligently made; and (2) that he received ineffective assistance of counsel.

The Petitioner's claim of ineffective assistance of counsel is governed by the Strickland test: was (1) counsel's performance deficient under an objective standard of reasonableness; and (2) was there was reasonable probability that, but for counsel's unprofessional errors, the result

of the proceedings would have been different. Syl. Pt. 1, <u>State ex rel. Strogan v. Trent</u>, 196 W.Va. 148, 469 S.E.2d 7 (1996). Counsel's performance is strongly presumed to be reasonable.

"A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutional acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of effectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately."

<u>State v. Frye</u>, 221 W.Va. 154, 158, 650 S.E.2d 574, 578 (2006).

Due process requires that a guilty plea be voluntary, knowing and intelligent. A guilty plea based on competent advice of counsel represents a serious admission of factual guilt, and where an adequate record is made to show it was voluntarily and intelligently entered, it will not be set aside.[22] Syl. Pt. 3, <u>State ex rel. Burton v. Whyte</u>, 163 W.Va. 276, 256 S.E.2d 424 (1979). Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; and (3) the guilty plea must have been motivated by the error. Syl. Pt. 3, <u>State v. Sims</u>, 162 W.Va. 212, 248 S.E.2d 834 (1978). The Petitioner bears the burden to proof to demonstrate that his plea was not voluntary, knowing, and intelligent under a totality of the circumstances. Syl. Pt. 3, <u>Potter v. Mohn</u>, 163 W.Va. 474, 256 S.E.2d 763 (1979).

---

[22] The Court notes that Mr. Bland entered an Alford plea, which allowed him to maintain his innocence.

## Discussion

In his various filings, Mr. Bland has asserted his innocence. He has also asserted various explanations for how the child pornography appeared in his possession. At times, he has claimed that the minor victims must have had the pornography,[23] an unspecified ex-girlfriend planted the pornography,[24] and law enforcement planted the pornography.[25] As to why the three Mineral County children provided statements that he sexually abused them, exposed them to pornography, asked them to pose nude for a web cam, and conducted himself in a sexually explicit manner around them, Mr. Bland stated that they made up the allegations because he stopped providing them with gifts and money. As to A.K., the minor in the Grant County case, he stated it was because he could no longer afford to keep custody of him.[26] During his testimony at the omnibus evidentiary hearing, the essence of Mr. Bland's testimony regarding his attorney's performance was that Mr. Ours entirely failed to follow any of Mr. Bland's requests or act in his defense at all. The Court finds Mr. Bland's testimony wholly without credibility.

## I.    Ineffective Assistance of Counsel

The Petitioner has alleged that by failing to interview witnesses, request a competency hearing, and request a taint hearing, his trial counsel's advocacy amounted to ineffective assistance of counsel. As previously discussed above, not only must the Petitioner prove by a preponderance of evidence that his trial counsel was ineffective by an objective standard, he must also prove that there is a reasonable probability that had he received effective assistance the out result of the proceedings would have been different. However, Petitioner has not asserted in any of his

---

[23] See Mr. Bland's November 18, 2006 Statement, attached to the Mineral County Police Report.
[24] See Second Supplement in Support on Petition for Writ of Habeas Corpus, filed July 12, 2010, p. 4.
[25] Mr. Bland testified to this at the August 4, 2015, omnibus evidentiary hearing.
[26] Per Mr. Bland's testimony at the August 4, 2015, omnibus evidentiary hearing.

filings or during argument at the August 4, 2015, omnibus evidentiary hearing that the outcome of the matter would have been different had trial counsel taken the steps that the Petitioner alleged he did not. Furthermore, Mr. Bland was facing a period of incarceration of up to 192 years in the penitentiary if convicted of every offense in the Mineral County Indictment and a period of incarceration of not less than 750 years and not more than 1650 years if convicted of every offense in the Grant County Indictment. Instead, trial counsel obtained for Mr. Bland a plea agreement that allow Mr. Bland to appear before the parole board after 25 years of incarceration would discharge his sentence after approximately 42 ½ years of incarceration. Although Mr. Bland would be aged approximately 55 years old at the time he would be eligible for parole and approximately 72 ½ before his sentence would have been discharged, this plea agreement would allow him to spend at least part of his life outside of a penitentiary. Had Mr. Bland been convicted by a jury of every offense in the two Indictments, and faced trial on the remaining Hardy County charges, he was certain to die in prison.

### A. Failure to Interview Witnesses

The Petitioner alleges that his trial counsel failed to interview three individuals, namely Kevin Crites, Joseph Crites, and Jesse Crites, who he described as both fact and character witnesses. Petitioner did not identify what facts these individuals possessed or their anticipated testimony had the cases proceeded to trial. However, trial counsel, Mr. Ours, testified that he did interview witnesses identified by the Petitioner and that these witnesses would have been character witnesses. Although Mr. Ours's memory was hampered by the passage of time and lack of file to review, it appears that he did interview at least some of the potential witnesses requested by the Petitioner. The Petitioner has failed to prove what exactly these witnesses' anticipated tes-

timony would have been or how that testimony would have affected the outcome of the case, if it would have affected the outcome at all. Without knowing what the substance of the individuals' expected testimony, there is no way to determine the testimony's possible effect on a jury. Given the strength of the State's case against the Petitioner, the mere fact that there may have been witnesses that Petitioner's counsel did not interview (which is disputed by trial counsel), even if their testimony was known, it may not have changed the tenor of the case. The Petitioner has not met either prong of the Strickland test: that trial counsel actually failed to interview the witnesses or that interviewing the witnesses would have changed the result of the proceedings.

### B. Failure to Request Competency Hearing

The Petitioner alleges that his trial counsel's performance was ineffective because he failed to request a competency hearing. The Petitioner states that he suffered a nervous breakdown in 2005. The Petitioner also asserts that he "begged" his trial counsel, Mr. Ours, to speak with Dr. Eagle, the Petitioner's psychiatrist.

West Virginia Code § 27-6A-2(a) states that a competency evaluation should be granted if there is reasonable cause to believe that the defendant is incompetent or suffers from sufficient mental problems to raise an issue of criminal responsibility or diminished capacity. (emphasis added.)

It is undisputed that trial counsel did not request a competency hearing. However, trial counsel testified at the omnibus evidentiary hearing that he did speak to the Petitioner's psychiatrist regarding the Petitioner's mental health and competency defenses. Mr. Ours stated that the psychiatrist informed him that Mr. Bland was not incompetent and that, in his professional opinion, a criminal responsibility or diminished capacity defense would not apply to Mr. Bland. Fur-

thermore, trial counsel and the former Grant County Prosecuting Attorney both testified that they had known Mr. Bland since he was young and that he did not exhibit any changes in behavior or demeanor that would have led them to have concerns about Mr. Bland's competency or mental status.[27] A review of the sentencing hearing transcripts does not reveal any obvious competency issues. Mr. Bland appears to have understood the proceedings, answered questions appropriately, and generally to have been attuned to his surroundings. Mr. Bland did not exhibit any unusual behaviors throughout the cases, from May 2007 through March 2008, ample time for counsel and court personnel to take notice of Mr. Bland's behavior.

Although it is undisputed that a competency hearing was not sought, the Petitioner has not established that there was reasonable cause to do so. At his request, his attorney spoke with his psychiatrist and was advised that a competency defense was not applicable. Thus, there was no reasonable cause to request a competency hearing and trial counsel's performance was not deficient under the first prong of Strickland. Further, the Petitioner has not introduced testimony from his psychiatrist or any medical records from his psychiatrist that he was incompetent or that his mental state was sufficiently impaired to assert a competency defense. The Petitioner has not pointed to any specific acts or testimony of his that would demonstrate that he was not competent in March 2008. Nor has he presented any evidence that the use of the anti-depressant Lexapro, which he was taking at the time of the plea hearings, would impair his ability to understand the proceedings or render him incompetent. Even had the failure to request a competency hearing been ineffective assistance of counsel, the Petitioner has not met the burden of the second prong of the Strickland test: that had counsel requested a competency hearing, he would have been found incompetent and would not have entered the pleas in March 2008.

[27] As discussed previously, Mr. Bland admitted that both trial counsel, John G. Ours, and the then-Grant County Prosecuting Attorney, Dennis V. DiBenedetto, had known him from a young age.

## C. Failure to Request Taint Hearing

Although the Petitioner did not mention the issue of a taint hearing in any of his filings, a good portion of the omnibus evidentiary hearing was dedicated to the topic.[28] Petitioner argues that his trial counsel's failure to request a taint hearing on the child victims' statements prior to the entry of his pleas in March 2008 amounted to ineffective assistance of counsel. Trial counsel did not dispute that he did not request a taint hearing. The Petitioner has not argued, however, that the interviews with the child victims were unduly suggestive, that the child victims were coached, or that improper interview procedures took place.

The West Virginia Supreme Court of Appeals specifically rejected the argument that pre-trial taint hearings should be held as a matter of routine in cases involving sexual abuse victims. See State v. Smith, 225, W.Va. 706, 714, 696 S.E.2d 8, 16 (2010). The Supreme Court stated

"requiring circuit court to hold pretrial taint hearings in every case involving a sexual abuse victims would necessarily lead to a host of new issues on appeal and would more than likely become an abused discovery tool for a defendant accused of such a crime. [. . .] We see no reason to subject victims of sexual abuse to a new and unnecessary layer of interrogation that is unlikely to yield any positive results. Sexual abuse victims are often children who are more likely to experience short-term and long-term consequences such as behavioral problems; social withdrawal; personality and/or substance abuse disorders; depression; and other psychiatric problems. Questions surround the technique of interviewers can properly and adequately be dealt with during cross-examination at trial [. ..]" Id.

Because taint hearings are not required in sexual offenses cases, trial counsel's failure to request a taint hearing cannot have automatically constituted an ineffective assistance of counsel. The Petitioner has not advanced any arguments beyond the simple assertion that a failure to request a taint hearing is ineffective assistance. The Petitioner has not pointed to interview questions that are arguably suggestive or asserted that law enforcement used improper interview

---

[28] The Court disapproves of this issue suddenly appearing at the evidentiary hearing after several years of filings. Surprise arguments make the Court's work in assessing and efficiently dealing with cases more difficult and is unfair to opposing counsel who cannot prepare for issues that have not been raised in filings. Nevertheless, out of an abundance of caution and to attempt to deal with all issues in one case, the Court is ruling on the argument.

techniques. The only evidence regarding whether a taint hearing was merited came from trial counsel's testimony. Trial counsel testified that he took steps to establish whether the victims were credible, by reviewing the discovery and interviewing some of the victims, whom he found credible.

The Petitioner bears the burden of proof in this matter and does not present any evidence or argument that had a taint hearing been requested, it would have (or should have) been granted, or that a taint hearing would have had any bearing on the ultimate disposition of Mr. Bland's criminal cases. There is nothing to suggest that the trial courts would have done anything other than let the interview techniques be subject to cross-examination at trial per State v. Smith. Thus, this Court cannot even find a taint hearing would have been granted if it had been requested, let alone that the Court would have excluded the victims' testimony in such a hearing. As a matter of law, trial counsel's failure to request a taint hearing was not deficient under an objective standard of reasonableness, as set forth in the first prong of Strickland, and, under the second prong of Strickland, there is nothing to suggest that had a taint hearing been requested that there was a reasonable probability that the result of the proceedings would have been different.

## D. Failure to Request Evaluations of the Victims

The Petitioner states that his trial counsel did not request the Court to obtain evaluations of the minor victims. The Petitioner did not assert this ground in his brief but argued it at the omnibus evidentiary hearing.[29] Petitioner did not asset what he expected the psychological evaluations would have revealed had they been granted or how it would have changed the outcome of the case.

---

[29] Again, the Court expresses its disapproval of a surprise argument at the omnibus hearing, for the reasons discussed in Footnote 28, supra.

It is not typical practice in the 21st Judicial Circuit to order evaluations of juveniles as a matter of routine. Like the West Virginia Supreme Court Appeals in State v. Smith, this Court sees "no reason to subject victims of sexual abuse to a new and unnecessary layer of interrogation that is unlikely to yield any positive results." The juveniles were interviewed by law enforcement, defense counsel, and a psychologist to determine whether they should testify in the courtroom in front of the Petitioner at trial. Had trial counsel requested evaluations of the victims, the request would likely have been denied.

Nevertheless, A.K. underwent psychological evaluations as part of a Child Protective Services investigation. The Court reviewed the entire CPS file *in camera*, including the the evaluations, and released a summary of the evaluation's contents to counsel. Mr. Bland was aware of this summary, as he attached it to *pro se* Third Supplement in Support on Petition for a Writ of Habeas Corpus. Mr. Bland and his counsel undoubtedly took these evaluations into consideration in weighing the merits of the case and determining whether to accept a plea offer. The only evidence that an evaluation of the victims would make any difference is Mr. Bland's statement that one of the victims (who he did not specify by name) is a pathological liar. Even had evaluations been conducted of all the victims, there is nothing to suggest that the evaluations would have turned the tables in the cases, especially given the overwhelming evidence. With the number of children, especially two separate sets of victims who it does not appear knew each other, it is unlikely that each child was a pathological liar and that evaluations would have led to a different result in either the plea negotiations or trial, as required by Strickland.

### E. Trial Counsel's Lack of Preparation

Mr. Bland asserts that his counsel did not adequately prepare the case for trial, only spoke with him about the plea agreements shortly before the March 14, 2008, Grant County plea hearing, and did not adequately prepare Mr. Bland to enter a plea. This evidence is contradicted by the record and Mr. Bland's own testimony at the March 14, 2008 hearing. Trial counsel represented the Petitioner from at least March 2007, when Mr. Bland canceled an interview with law enforcement on the advice of counsel, until March 2008.

Mr. Ours filed suppression motions and argued these at the suppression hearings in both counties. In Grant County, he sought the CPS records of the victim and obtained the trial court's summary of the evaluations that were relevant to the Grant County sexual abuse case. He engaged in weeks of plea negotiations with three prosecutors in two judicial circuits. He followed the Petitioner's requests to speak with witnesses. He considered competency defenses and spoke to the Petitioner's psychiatrist to investigate these defenses. The case proceeded as far in Grant County as to file pre-trial memoranda and prepare for trial. Ultimately, as Mr. Bland admitted during the March 14, 2008, plea and sentencing hearing, the "evidence that is overwhelming that John and I both feel that is incapable of taking on." March 14, 2008, Hearing Transcript, p. 34.

Furthermore, Mr. Bland testified at the March 14, 2008, hearing that a plea deal had been circulating for weeks and that his trial counsel spoke with him about the plea agreement on March 9, 2008, and March 13, 2008, and again before the Grant County plea hearing commenced. Mr. Bland's own testimony completely contradicts the claim that trial counsel only spoke with him about the plea agreement for a few minutes before the plea hearing.

### F. Failure to Hire Private Investigator

The Petitioner also argued that trial counsel's failure to hire a private investigator to investigate the underlying facts constituted ineffective assistance of counsel. At the omnibus evidentiary hearing, trial counsel stated that he has hired private investigators in the past, when they have been available, but that he has typically been disappointed in their results and prefers to conduct some investigatory work himself. This included speaking with at least some of the potential witnesses offered by the Petitioner, speaking with the Petitioner's psychiatrist, and interviewing some of the victims in the criminal case. Even if the failure to hire a private investigator was an ineffective assistance of counsel, the Petitioner has not demonstrated that hiring a private investigator would have made a demonstrable difference in the result of the proceedings. He has not identified any witnesses, testimony, or evidence that could have gained him the upper hand in plea bargaining or would have exonerated him at trial.

## II.  Involuntary Plea

The Petitioner, Mr. Bland, asserts that his plea was not voluntarily and intelligently made and argues that his trial counsel only met with him about the plea agreement a few minutes before the plea hearing, trial counsel told him that he would receive probation, and generally did not prepare him for trial or the plea. Mr. Bland's assertions are entirely contradicted by the record. In addition, Mr. Bland argued at the omnibus evidentiary hearing that he did not remember either the plea and sentencing hearing in Grant County or the one in Mineral County and opined that this is because of the prescription medication he was taking.

In order for a trial court to ascertain whether a plea was voluntarily and intelligently given, the trial court is to advise "the defendant of the numerous constitutional rights he waives by

pleading guilty, [recite] the terms of the plea agreement and should assure itself that there is no coercion or undue pressure on the defendant to enter a plea. Finally, the trial court should inquire about the defendant's education, his history of mental illness or drug abuse, and whether he has had an opportunity to consult with friends and relatives before making his decision to plead guilty." Duncil v. Kaufman, 183 W.Va. 175, 180, 394 S.E.2d 870, 875 (1990) (citing Call v. McKenzie, 159 W.Va. 191, 220 S.E.2d 665 (1975))

Mr. Bland does not argue that the Court's Rule 11 colloquy was defective. Both trial courts conducted such a colloquy during the plea and sentencing hearings. During that colloquy, Mr. Bland stated that the prescription drug he was taking at the time, Lexapro, did not impair his judgment, that he understand the plea and possible sentencing consequences, gave a detailed description of his education and employment history, and his opportunity to consult with family regarding the plea agreement. Furthermore, Mr. Bland evinced an understanding of the plea agreement and sentencing. He knew that he would appear before the parole board after twenty-five years of his incarceration and would discharge his sentence after approximately forty-two years. It is clear from his testimony and answers at the plea and sentencing hearings that Mr. Bland was in full command of his faculties. Mr. Bland now argues that he does not remember the hearings at all and blames taking Lexapro. Yet he cannot explain his cogency during those plea hearings and has presented no evidence that an antidepressant would cause a temporary blanket of amnesia. This argument is also unconvincing because Mr. Bland claimed to remember in detail his conversation with his trial counsel throughout the pendency of the criminal cases yet claims no memory whatsoever of the plea hearings. Furthermore, the Petitioner has not met the burden that he was incompetently advised and the Court has found that trial counsel provided competent assistance.

### III. *Pro Se* Grounds for Writ of Habeas Corpus

The Petitioner asserted numerous other grounds for habeas relief in his *pro se* filings, which counsel ostensibly incorporated by reference into the Second and Third Amended Petitions. However, he presented no argument on those other grounds at the omnibus evidentiary hearings. As the West Virginia Supreme Court has noted on many occasions, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim; judges are not like pigs, hunting for truffles buried in briefs." State v. Harris, 226 W.Va. 471, 476, 702 S.E.2d 603, 608 (2010) (quoting State v. Day, 225 W.Va. 794, 806 n. 21, 696 S.E.2d 310, 322 n. 21 (2010)). Out of an abundance of precaution, the Court will address those claims briefly.

Many of the grounds Mr. Bland asserted in his *pro se* petitions, namely the original Petition for Writ of Habeas Corpus filed on July 10, 2009, Second Supplement on July 12, 2010, and Third Supplement on August 6, 2010, are duplicative. This Court, therefore, is consolidating the grounds listed in those petitions that have not already been addressed and addressing each in turn.

#### A. Trial Counsel's Unprofessional Errors

The Petitioner argued in his July 2009 Petition that trial counsel committed numerous "unprofessional errors" but does not specify what those errors were. Presumably these are the errors already discussed in this Order, as well as more specific alleged deficiencies, which are discussed below. Without specific factual allegations on which to rule, the Court cannot determine that validity of this claim.

## B. Trial Counsel's Deficient Argument Regarding Pre-Trial Motions

In his July 2009 Petition, the Petitioner argues that trial counsel was ineffective because he presented deficient suppression arguments. Presumably this pertains to the search warrant for the Petitioner's Mineral County apartment and the Petitioner's statement to Sgt. Droppleman of the Keyser Detachment of the West Virginia State Police. Both courts held suppression hearings in the cases, on June 28, 2007, in Mineral County and on July 26, 2007, in Grant County. The search warrant executed on the Petitioner's Mineral County apartment was based entirely on the evidence given by the victims and their parents, after one of the victims disclosed some of the Petitioner's inappropriate acts. A re-visitation of the search warrant reveals that law enforcement had adequate grounds for probable cause and searching the Petitioner's apartment, the scene of the Mineral County charges. Likewise, a review of the Petitioner's statement reveals no suppressible issues. The Petitioner gave a non-custodial statement the day that his apartment was searched and when he was not under arrest, which essentially denied the victims' allegations. Later, when he was under arrest, the Petitioner asked for the lead investigating officer and indicated he wanted to give a statement. Mr. Bland was mirandized and began filling out a Miranda Rights Waiver form. Mr. Bland changed his mind while reviewing the form, however, and he did not give a statement. Trial counsel's arguments were not deficient inasmuch as there were no constitutional violations, meaning that no argument, no matter how high-flown or persuasive, would have permitted the trial courts to suppress the evidence.

### C. Trial Counsel's Failure to Move Court to Inspect Sealed Medical & Mental Health Records of Alleged Minor Victims & Failure to Obtain DHHR Records

In his July 2009 Petition and August 2010 Third Supplement, the Petitioner argues that his trial counsel failed to move the trial court to inspect the sealed medical and other records of the alleged minors victims. It is not immediately apparent from the record but it does not appear that the Mineral County victims had any medical or mental health records to disclose.[30] On the other hand, A.K. was the subject of a CPS investigation and did undergo two psychological examinations. After a motion filed by the Petitioner's counsel and hearing on the record, the CPS file and psychological were provided to the Court *in camera* by the West Virginia DHHR. After reviewing the records, the Court prepared a summary of the relevant records, which was provided to the Petitioner's trial counsel. Because the victim's mother, not the Petitioner, was the focus of the CPS investigation, the Court prepared the summary that identified the portions of the DHHR file relevant to the criminal cases. The Petitioner had a copy of this summary because he attached it to his Third Supplement in Support on Petition for a Writ of Habeas Corpus. Thus, this ground is meritless, as trial counsel did request the records and obtained the Court's summary of the relevant portions of the DHHR file.

### D.    W.Va. Code §§ 61-8A-2 and 61-8A-4 do not apply to the Petitioner's actions.

The Petitioner argues that the W.Va. Code § 61-8A-2 (Distribution and Display of Obscene Material to a Minor) and § 61-8A-4 (Use of Obscene Matter with Intent to Seduce a Minor) do not apply to the acts alleged in the Mineral County Indictment.

---

[30] The Mineral County victims were not subjected to sexual offenses that a forensic examination would reveal.

With W.Va. Code § 61-8A-2, the Distribution and Display of Obscene Material to a Minor, Mr. Bland argues that because he "is accused of displaying the matter in the privacy of his own home and not to the general public" and that "these statutes <u>do not</u> limit private displays!" to minors. <u>Petition for Writ of Habeas Corpus Subjiciendum</u>, p. 10 (emphasis in original). W.Va. Code § 61-8A-2(a) reads "Any adult, with knowledge of the character of the matter, who knowingly and intentionally distributes, offers to distribute, or displays to a minor any obscene matter, is guilty of a felony." "Display, as defined by W.Va. Code § 61-8A-1(d), "means to show, exhibit or expose matter, in a manner visible to general or invited public, including minors." The minors were part of an invited public to Mr. Bland's home where they viewed the obscene material. In the statute's context "invited public" means members of the public that Mr. Bland invited to his home to view the pornographic material. Merely presenting the material in the privacy of his apartment did not render his actions legal.

Mr. Bland further argues that the term "material" is unconstitutionally vague. As "material" does not appear in the language of the statute, the Court assumes that Mr. Bland is referring to the term "matter," which is in the statute. "Matter" is defined by W.VA. Code § 61-8A-1(i) as

"any visual, audio, or physical item, article, production transmission, publication, exhibition, or live performance, or reproduction thereof, including any two- or three- dimensional visual or written material, film, picture, drawing, video, graphic, or computer generated or reproduced image; or any book, magazine, newspaper or other visual or written material; or any motion picture or other pictorial representation; or any statue or other figure; or any recording, transcription, or mechanical, chemical, or electrical reproduction; or any other articles, video laser disc, computer hardware and software, or computer generated images or message recording, transcription, or object, or any public or commercial live exhibition performed for consideration or before an audience of one or more."

The definition of "matter" within the statute specifically outlines what is included in the term "matter." Because of the specific definition, the term is not unconstitutionally vague.

### E. The Unconstitutionality of the W.Va. Code § 61-8C-3

The Petitioner argues that the W.Va. Code § 61-8C-3, prohibiting the possession, distribution and display of material "visually portraying minors in sexually explicit conduct" is unconstitutional under Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002). The United States Supreme Court, in Ashcroft v. Free Speech Coalition, struck down the provisions of the federal Child Pornography Prevention Act of 1996 that prohibited the possession of material that "appeared to be" minors in sexually explicit conduct as being constitutionally overbroad. The W.Va. Code § 61-8C-3 only criminalizes the possession of material that depicts actual minors, contrary the federal statute, which criminalized the possession of materials that appeared to depict minors, even if the individuals portrayed were adults. Because the West Virginia statute does not prohibit material depicting adults in sexually explicit conduct, even if the adults appear to be the age of minors, it is constitutional under the case cited by the Petitioner.

### F. Lack of Jurisdiction in Mineral County

Beyond a base assertion that the Mineral County trial court lacked jurisdiction, the Petitioner has not shown that jurisdiction was lacking. The crimes occurred in Mineral County, where the Petitioner was living at the time the investigation began, and the victims were Mineral County residents living in the same apartment complex in which the Petitioner resided.

### G. The State's Failure to Disclose Exculpatory Evidence

Mr. Bland argues that the State failed to disclose that "the state police officer who interviewed the purported juvenile- minor have been different." Petition for Writ of Habeas Corpus Subjiciendum, p. 12. The Court has reviewed the statements of each juvenile and the lead inves-

tigating officer, Sgt. J.M. Droppleman, conducted the interviews of each of the juvenile victims. Sgt. Droppleman also conducted the Petitioner's statement, oversaw the search, and testified at the suppression hearings. The Petitioner's claim is both wrong in that the same officer conducted the statements and that is it non-exculpatory.

Mr. Bland also claims that the State withheld exculpatory evidence because it knew the juveniles' allegations were false. Petition for Writ of Habeas Corpus Subjiciendum, p. 13. The State clearly believed that the juveniles' allegations were true and the Petitioner has presented no evidence to show that the juveniles allegations were, in fact, false.

### H. The Illegal Statement taken from the Petitioner

During the course of the investigation, Sgt. Droppleman of the West Virginia State Police took a statement from the Petitioner during the search on the Petitioner's apartment on November 18, 2006. Mr. Bland was not under arrest nor was he in custody. Mr. Bland argues in his original *pro se* Petition, that on March 23, 2007, when the Petitioner was arrested, Sgt. Droppleman "made Petitioner sign a piece of paper and initial it while in custody, but only after he had questioned Petitioner and obtained incriminating statements in violation of his Miranda Rights." Petition for Writ of Habeas Corpus Subjiciendum, p. 17. However, the discovery reveals that the Petitioner did not give a statement on March 23, 2007. Instead, Mr. Bland initially wanted to give a statement but changed his mind after beginning to fill out the Miranda Rights Waiver form. Thus, the waiver form was not completely executed and Mr. Bland did not give a statement on that date or subsequently. Constitutional violations did not occur on either occasion.

### I. Excessive and Disproportionate Sentence in Grant County

Mr. Bland was sentenced to an aggregate term of not less than thirty-five (35) nor more than eighty-five (85) years on the Grant County charges. Mr. Bland cites the case of State v. Eden, 163 W.Va. 370, 256 S.E.2d 868 (1979), to argue that the Grant County sentence was excessive. State v. Eden stands for the proposition that when a Defendant is convicted following a successful appeal the trial court cannot impose a sentence higher than the original sentence. Id at 384, 867. The Petitioner has not been convicted following a successful appeal nor has he been resentenced. State v. Eden does not apply.

### J. Conflict of Interest

The Petitioner argues that Judge Frye, who handled the Mineral County case, had a conflict of interest due to unspecified "dealings" between the Frye and Bland family. Second Supplement in Support on Petition for a Writ of Habeas Corpus, Ground Three, p. 2. In Ground Seven, p. 5, of the Second Supplement, Mr. Bland states that Judge Frye had business dealings with the Petitioner's family between 1972 and 1974. The Petitioner also states that his grandfather was friends with Judge Frye. The Petitioner does not specify what those dealings were or how a conflict would have arisen because of them. Business dealings of thirty years-past, unless of an unusual nature, are unlikely to generate a conflict with a family member's criminal case. In a small town, it is nearly inevitable for individuals in the court system to not have any sort of connection with criminal defendants, as this case well attests, given trial counsel and the Grant County Prosecutor's familiarity with the Petitioner. Further, if anything, a friendship between Judge Frye and the Petitioner's grandfather would have inured to the Petitioner's benefit.

The Petitioner does not argue that he has a conflict with the judge who presided over the Grant County case and does not argue that any perceived conflict of interest would have affected the outcome of the Grant County case.

### K. Failure to Obtain DNA Evidence

The Petitioner argues that DNA evidence could clear his name in Ground Five of his Second Supplement in Support on Petition for Writ of Habeas Corpus, p. 4. The Petitioner argues that DNA evidence was not disclosed in discovery, which is correct. A review of the police reports do not reveal that any DNA evidence was taken during the investigation or would have been available at all. Many of the crimes, namely Possession of Material Depicting Minors in a Sexually Explicit Manner, would not likely have yielded any DNA evidence. The crimes in which DNA evidence would have been available had largely taken place before the late-2006 investigation began and any DNA evidence was likely destroyed or unavailable. Thus, a failure of either the State or Defense counsel to obtain DNA evidence would have had no bearing on the criminal cases.

### L. Intentional Acts of Fellow Regional Jail Inmate

The intentional acts to which the Petitioner refers are that an inmate stole his legal documents and offering to give a statement against him. Second Supplement in Support on Petition for a Writ of Habeas Corpus, Ground Six, p. 4. This inmate, Arthur Allen, was subpoenaed to appear at the Petitioner's Grant County trial and his testimony was expected to consist of a conversation Mr. Allen had with the Petitioner where the Petitioner confessed to committing the crimes subject to the criminal cases. The trial courts had no control over the actions of fellow

set at $100,000.00 cash only.[31] Jail Commitment Order, March 24, 2007. The Circuit Court continued this bond at Mr. Bland's arraignment. Arraignment Order, May 11, 2007.

When the Petitioner was arrested and brought before a Magistrate in Grant County, his bond was initially set at $650,000.00 cash or bondsman. Initial Rights Statement, March 24, 2007. By the time the Magistrate Court case was transferred to Circuit Court, the bond had been reduced to $10,000.00 cash. Magistrate Court Case History, April 17, 2007. When Mr. Bland was arraigned in Grant County Circuit Court, the Court ordered that he be held in custody, rather than be continued or released on bond. Arraignment Order, July 13, 2007. Because the Grant County Circuit Court ordered that the Petitioner be held in custody rather than setting a bond, trial counsel did not err in failing to motion for a bond reduction. It is clear from the high bond set in Mineral County and the denial of bond in Grant County that the trial courts would not have allowed the Petitioner to be released from custody.

### O. The Evaluations of A.K. Prove that the Petitioner is Innocent

The Petitioner argues that the psychological evaluations of A.K. prove that he is totally innocent. Third Supplement in Support on Petition for a Writ of Habeas Corpus, Ground Two, pp. 2-3. The Petitioner attached the Court's summary of the DHHR records pertaining to a CPS investigation of A.K., the victim in the Grant County case to his *pro se* Third Supplement in Support on Petition for a Writ of Habeas Corpus. The summary attached to the Third Supplement, which is attached as Exhibit___,[32] included descriptions of two psychological evaluations performed on A.K. Both of these evaluations primarily dealt with issues not related to sexual

---

[31] The Mineral County Magistrate Court History lists the bond as $1,000.00 but this is a clerical error.

[32] The Court redacted use of the minor victim's first name and his mother's full last name to keep his identity confidential, as this habeas case is open to the public. Otherwise, the underlined portions, highlighted portions, and notes, are those from the Petitioner.

2008 to discuss the plea agreement and they spoke about it again on March 14, 2008, before the hearing.[33]

5. Trial counsel honored the Petitioner's requests to interview witnesses, interview the Petitioner's treating psychiatrist, and inquire into a possible competency defense.

6. Trial counsel reviewed the discovery and pleadings with the Petitioner.

7. Trial counsel visited the Petitioner at the regional jail on eight separate occasions and exchanged voluminous correspondence with him.

8. Trial counsel conducted suppression hearings in both cases and sought potentially relevant exculpatory evidence in the hands of the West Virginia Department of Health and Human Resources.

9. Trial counsel succeeded in obtaining potentially exculpatory materials from the West Virginia Department of Health and Human Resources for the Grant County case.

10. Trial counsel's failure to request a taint hearing is not an automatic ineffective assistance of counsel, as the West Virginia Supreme Court of Appeals in State v. Smith, 225, W.Va. 706, 714, 696 S.E.2d 8, 16 (2010) specifically rejected the argument that taint hearings must be held in child sex abuse cases.

11. The Petitioner authorized his trial counsel to engage in plea negotiations.

12. Trial counsel engaged in weeks of plea negotiations with three prosecutors in two judicial circuits.

13. Trial counsel met with the Petitioner review the plea agreement on three occasions prior to the March 14, 2008, and March 17, 2008, plea hearings.

---

[33] Trial counsel's testimony and voucher corroborate these visits.

inmates at the regional jail. Had the matter gone to trial, the Petitioner would have been able to cross-examine Mr. Allen regarding his testimony and his reasons for testifying. There are no constitutional violations regarding this inmate's acts, especially as Mr. Allen was not alleged to have been a state actor.

## M. Trial Counsel's Failure to Obtain Computer Expert

Mr. Bland lists as a ground the failure to obtain a computer expert. Second Supplement in Support on Petition for Writ of Habeas Corpus, Ground Eight, pp. 5-6. Law enforcement seized the Petitioner's computer tower during the search of the Petitioner's apartment in Mineral County and sent it to the State Police Laboratory for analysis. An analysis of the computer tower was not disclosed in discovery. According to the Mineral County Prosecutor's testimony at the Mineral County sentencing hearing and trial counsel's testimony, the results of the analysis were returned shortly before trial. No analysis or report was filed at any point and there was no trial exhibit disclosed pertaining to the computer tower. Because the computer was not going to be introduced by the State at trial, it was not an ineffective assistance of counsel to fail to obtain a computer expert.

## N. Trial Counsel's Failure to Obtain Bond Reduction

Mr. Bland appears to argue that his trial counsel's failure to obtain a bond reduction was an ineffective assistance of counsel. See Petition for Writ of Habeas Corpus Ad-Subjiciendum, Second Supplement in Support on Petition for Writ of Habeas Corpus, Ground Ten, p. 6. The Petitioner was brought before the Mineral County Magistrate Court in March 2007 and bond was

abuse, namely neglect and a possible adjustment disorder. Renee Harris, the first evaluator noted that A.K. denied being sexually abused but discussed that A.K. displayed strong signs of sexual abuse, including bowel control problems, and recommended further evaluations or examinations. A.K. did not disclose sexual abuse by the Petitioner to the second evaluator, Chanin Kennedy either. However, A.K. scored 76 on the Child Sexual Behavior Inventory assessment, where a score of 65 or above is considered clinically significant for child sexual abuse victims. She further noted that he displayed more sexual behavior than typical of a 10-11 year old boy, including simulating sexual intercourse on another child and constantly touching his genitalia in private and in public. Court's Summary of Potentially Relevant Portions of DHHR File.

A.K.'s initial disavowal of sexual abuse does not prove the Petitioner's innocence, especially given that while A.K. denied abuse he displayed strong signs of sexual abuse. It is not unusual for a child sexual abuse victim to initially deny that they were sexually abused. Had the matter gone to trial, trial counsel would have been able to cross-examine A.K. regarding his initial denials of sexual abuse. As discussed supra, the Petitioner made the strategic decision to enter a plea and forgo cross-examining A.K.

A.K. was one of four victims, as well. A.K.'s evaluations have no bearing on the other three victims' expected testimony, the testimony of their parents, and the physical evidence found in the Petitioner's apartment, all of which strongly support the veracity of the Mineral County crimes.

### P. Failure of Trial Counsel to Take Appeal

The Petitioner did not directly appeal his case. Mr. Bland merely asserts in p. 10 of this July 2009 Petition that trial counsel did not prepare an appeal and does not assert that he request-

ed counsel to represent him on a direct appeal of his convictions. Mr. Bland did not motion for the appointment of counsel to represent him on an appeal at any point from March 2008 to the present date, although he did petition for the appointment of counsel early into the habeas proceedings and was appointed counsel for that purpose. Trial counsel did not testify at the omnibus evidentiary hearing regarding why an appeal was not taken. Nor did Mr. Bland state during his lengthy testimony at the August 2015 evidentiary that he requested trial counsel to prepare an appeal or that he was unaware of his appeal rights.

### Findings of Fact and Conclusions of Law

1. The Petitioner has been adequately advised of his duty to raise all habeas claims in this proceeding by counsel and the Court.

2. The Petitioner affirmatively waived the following grounds in the Losh List submitted with his Second Amended Petition for Writ of Habeas Corpus:

   (i)      Indictment shows on face no offense was committed;
   (ii)     Prejudicial pre-trial publicity;
   (iii)    Denial of right to speedy trial;
   (iv)     Incapacity to stand trial due to drug use;
   (v)      Language barrier to understanding the proceedings;
   (vi)     Unintelligent waiver of counsel;
   (vii)    State's knowing use of perjured testimony;
   (viii)   Falsification of transcript by prosecutor;
   (ix)     Unfulfilled plea bargain;
   (x)      Information in pre-sentence report erroneous.
   (xi)     No preliminary hearing;
   (xii)    Illegal detention prior to arraignment;
   (xiii)   Defects in indictment;
   (xiv)    Pre-indictment delay;
   (xv)     Refusal of continuance;
   (xvi)    Refusal to subpoena witnesses;
   (xvii)   Prejudicial joinder of defendants;
   (xviii)  Lack of full public hearing;
   (xix)    Refusal to turn over witness notes after witness has testified;
   (xx)     Instructions to jury;

(xxi) Claims of prejudicial statements by trial judges;
(xxii) Claims of prejudicial statements by prosecutor;
(xxiii) Acquittal of co-defendant on same charge;
(xxiv) Defendant's absence from part of the proceedings; and
(xxv) Improper communications between prosecutor or witnesses and jury.

3. Although the Petitioner did not waive the following Losh List grounds, he did not present any evidence or argument in their support in any of his numerous filings, both *pro se* and by counsel, or during the omnibus hearing for the Court to consider and thus the Court FINDS that he has effectively waived the following grounds:

(i) Mental competency at time of crime;
(ii) Denial of counsel;
(iii) Consecutive sentences for the same transaction;
(iv) Double jeopardy;
(v) Irregularities in arrest;
(vi) Irregularities or errors in arraignment;
(vii) Challenge to the composition of grand jury or its procedures;
(viii) Improper venue;
(ix) Nondisclosure of Grand Jury minutes;
(x) Claim of incompetence at time of offense, rather than at time of trial;
(xi) Claims concerning use of informers to convict;
(xii) Sufficiency of evidence;
(xiii) Excessive sentence; and
(xiv) Amount of time served on sentence, credit for time served.

4. The Petitioner's testimony, riddled with inconsistencies, was inherently incredible. For instance, he argues that trial counsel did not review the discovery with him at all yet admits that he saw the victims' statements which would have only been available when viewing the discovery. Mr. Bland argues that trial counsel did not meet with him at all prior to the Grant County plea hearing to discuss the plea agreement yet Mr. Bland testified in the Grant County plea hearing that a plea agreement had been circulating for weeks prior to the hearing and that his trial counsel visited him at the Potomac Highlands Regional Jail on March 9, 2008 and March 13,

14. The Petitioner understood the complicated plea agreement. During the Grant County plea and sentencing hearing the Petitioner extemporaneously remarked that he would be eligible for parole within 25 years of his sentence and would be discharged at approximately 42 ½ years into his sentence.

15. From May 2007 when the Petitioner was arraigned on the Mineral County Indictment to March 2008 when he entered his pleas, the Petitioner did not demonstrate any behavior that would have given trial counsel or Court personnel reasonable cause the Petitioner was incompetent or raise the issue of criminal responsibility or a diminished capacity defense.

16. The Petitioner's answers and demeanor at both the March 14, 2008, Grant County plea and sentencing hearing and the March 17, 2008, Mineral County plea and sentencing hearing demonstrate that the Petitioner was competent to enter a plea and entered the pleas voluntarily.

17. At the plea hearings, the Petitioner testified that his medication, Lexapro, did not affect his competency to enter a plea.

18. The Petitioner has introduced no evidence, beyond the base assertions of his own testimony, that his prescription Lexapro rendered him incompetent to enter a plea in March 2008.

19. The Petitioner has introduced no medical or psychiatric evidence to indicate that he was incompetent to enter a plea in March 2008.

20. The Petitioner's March 2008 pleas were voluntarily and competently given in both the Mineral County and Grant County case when viewed by a totality of the circumstances.

21. The Petitioner has not proved by a preponderance of the evidence that trial counsel's failure obtain a private investigator, request a taint hearing, request a competency evaluation of the Petitioner would have changed the result of the proceedings.

22. The Petitioner admitted that the evidence against him in the criminal cases was overwhelming.

23. The Petitioner has not met the burden of the Strickland test to prove by a preponderance of the evidence that (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there was reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

24. Trial counsel acted competently and provided the Petitioner with effective assistance.

25. Any ineffective assistance of counsel did not change the outcomes of the proceedings.

26. The Petitioner's grounds in his *pro se* petitions are meritless, as discussed above, and habeas counsel did not address those grounds in his filings or during the omnibus evidentiary hearing.

## CONCLUSION

Mr. Bland faced a period of incarceration of up to 192 years in the penitentiary if convicted of every offense in the Mineral County Indictment and a period of incarceration of not less than 750 years and not more than 1650 years if convicted of every offense in the Grant County Indictment. Instead, trial counsel obtained a plea agreement that allows Mr. Bland to appear before the parole board after 25 years of incarceration and to discharge his sentence after approximately 42 ½ years of incarceration. Although Mr. Bland will be aged approximately 55 years old at the time he is eligible for parole and approximately 72 ½ before his sentence will be discharged, this plea agreement will likely allow him to spend at least part of his life outside of a penitentiary's walls. Had Mr. Bland been convicted by a jury of every offense in the two Indictments, and faced trial on the remaining Hardy County charges, he was certain to die in prison.

Mr. Bland was lucky to be given such a plea agreement given the disturbing nature of the offenses in which he was targeting vulnerable children, from age nine to fourteen, the number of victims, and the fact that his offenses occurred in three counties and two judicial circuits. The Petitioner owes this outcome to his trial counsel, John G. Ours, who zealously advocated on his behalf. Although the Petitioner obviously now rues the outcome, the only "slightly different" result would have been a higher sentence and certainty to die in prison had the Petitioner not entered the guilty pleas in the Mineral and Grant County cases.

WHEREFORE, the Court hereby **DENIES** the Petitioner's motion to vacate his convictions and award him new trials. The Court further **ORDERS** that the Petitioner's habeas petitions be **DISMISSED** and stricken from the Court's active docket.

The Clerk of the Court shall forward a copy of this order to (1) the Petitioner, Mount Olive Correctional Center, 1 Mountainside Way, Mt. Olive, WV 25185; (2) Eric Black, 380 South Washington Street, Berkeley Springs, WV 25411; and (3) the Prosecuting Attorney.

DONE and ENTERED this 1st day of September, 2015.

_____
Phil Jordan, Circuit Judge
21st Judicial Circuit